## JOHN SCOFIELD v. STATE.

No. A-2610.   Opinion Filed May 26, 1917.

(165 Pac. 210.)

**WITNESSES—Impeachment of Witness.** In a prosecution for selling liquor where the case was closely contested, the refusal to allow defendant to impeach employed detectives by showing that they had made statements out of court, as to who had made a sale, contradictory to their testimony in court was reversible error.

*Error from County Court, Woods County;*
*Gus Hadwiger, Judge.*

John Scofield was convicted of selling one pint of whisky to one Ralph McAfee, and sentenced to pay a fine of $50, and to imprisonment for 30 days, and he brings error. Reversed.

*L. T. Wilson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

PER CURIAM. The appellant was convicted of selling one pint of whisky to one Ralph McAfee for the price of $1. The transaction is alleged to have occurred in a barn in the town of Waynoka. Ralph McAfee, the prosecuting witness, 17 years of age, together with Ralph Trull, a young man 21 years of age, had come from Texas to Woods county a short time before this transaction, and testify that they met this defendant, a total stranger to them, on the streets of Waynoka, and asked him if he knew where they could get some whisky, and he told them that he had some or could get some. The defendant then went away, according to their testimony, and returned within a short time with a bundle under his arm, and directed them to this barn where the al-

leged sale is said to have taken place. The prosecuting witnesses and a man by the name of Cham Beeman preceded the defendant to the barn. Beeman was not a witness in the case. McAfee and Trull both testify that the defendant appeared at the barn with a quart of whisky wrapped up in an old pair of trousers and emptied out a pint of whisky into another quart bottle and sold it to McAfee for the sum of $1. The defendant testified that he saw these people going to the barn, and was suspicious and followed them up there in order to get a drink, and that when he got there they were just opening a quart of whisky which Beeman had at that time; that he did not sell any whisky on that occasion to anybody. Several citizens of Waynoka testify to the good reputation of the defendant for peace and as a law-abiding citizen. Upon the trial, the court, over the objection and exception of defendant's counsel, limited the cross-examination of these prosecuting witnesses in an endeavor on the part of said counsel to show their interest in the matter—that they were employed detectives of the sheriff and were to receive money for giving evidence in the case. The objections to such questions were sustained to such an extent that counsel for defendant made an effort to withdraw from the case. However, the court thereafter permitted a limited cross-examination along this line, but an effort was made by counsel for the defendant to impeach the prosecuting witness Ralph Trull, it being the theory of the defendant that if the prosecuting witnesses bought any liquor on that occasion it was sold to them by Beeman, and not by him. Counsel for defendant asked the witness Trull if he did not state, in the presence of one Homer Davidson, in the town of Waynoka, on the 23d day of September before the trial, to

Mr. Scofield, that he did not see how he could be convicted, as he did not make the sale. to which question an objection upon the part of the state's counsel was sustained, and to which ruling the defendant's counsel excepted; and also in the same conversation if he did not say that Mr. Scofield, the defendant, took no money, but that Cham Beeman took the money, to which he answered, "I don't think I did." Homer Davidson was then placed upon the stand in behalf of the defendant, and was asked whether or not Trull had stated, in substance, the impeaching matters inquired about, to the first of which the court sustained an objection and refused to permit the witness to answer, and as to that part of the conversation in which Trull had said that he did not say that Beeman took the money, the impeaching witness, Davidson, testified that he did so state, which answer, upon objection by the state's counsel, was stricken out, and the jury instructed not to consider it, on the ground that the testimony was without weight in the case and was to be given no credence as to Cham Beeman.

There is no question in the minds of the members of this court that the rulings of the trial court relative to this impeaching evidence were erroneous, and in view of the fact that this is a closely contested case in which the defendant, a farmer of good reputation as a law-abiding citizen, was convicted on the evidence of total strangers to him, who did not live in that community and were, as the record clearly discloses, employed detectives, it was competent for the defendant to impeach these witnesses by showing that they had made statements out of court relative to who made this sale contradictory to their testimony in court. Why the state did not call

13 O C R—15

Beeman as a witness in this case does not appear from the record, although he was present during all the time that the other state witnesses testify they had their dealings with the defendant, and as Beeman had an equal opportunity to make the sale, if one was made, the defendant had a right to impeach one of the prosecuting witnesses by showing that he did state, out of court, that Beeman was the man who did make the sale and receive the money. After an examination of the entire record we are convinced that this defendant was not accorded that fair and impartial trial to which he was entitled under our Constitution and statute. The judgment is therefore reversed.